CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
AUG 12 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CAROLYN R. EGGLESTON, | ) | CASE NO. 4:12CV00043 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's February 4, 2009 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision dated February 25, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since January 7, 2005, her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 16.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

alleged disability onset date.[2] (R. 12.) The Law Judge determined plaintiff's hypertension, diabetes with peripheral neuropathy, sleep apnea, obesity, and minimal L4 anterolisthesis and arthropathy were severe impairments.[3] (R. 12-14.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 14-15.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work with the additional limitations that she should not climb, kneel, or crawl, and should avoid hazards, heights, and fumes. (R. 15-20.)

The Law Judge relied on portions of the testimony of Barry Steven Hensley, Ed.D, a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 20-21, 41-45, 113-115.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform her past relevant work. (R. 20.) However, he determined that there were other jobs that existed in significant numbers in the local and national economy which she could perform: specifically, an electronic assembler, receptionist/information clerk, and surveillance system monitor. (R. 21, 43.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 21.)

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. *Id.* In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is September 30, 2007. *See* 20 C.F.R. § 404.131(a); (R. 12, 199.)

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

Plaintiff appealed the Law Judge's February 25, 2011 decision to the Appeals Council. (R. 1-5, 123-129, 445-475.) In its August 21, 2012 notice, the Council considered the additional evidence filed by the plaintiff on appeal (R. 1, 445-475), but it found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the final decision of the Commissioner on several grounds. First, plaintiff argues that the Law Judge erred by failing to acknowledge that her headaches were a

3

severe impairment. (Dkt. No. 15, at 19-20.) Second, plaintiff contends that the Law Judge erred by failing to adequately consider her obesity throughout the sequential evaluation. *Id.* at 21-26. Third, she argues that the Law Judge erred in the weight he gave the opinion of her treating physician Charles Marshall, M.D. (Dkt. No. 15, at 11-17.) Finally, plaintiff contends that the Law Judge erred in not crediting plaintiff's complaints of pain, and she specifically asserts that he failed to consider valid reasons for gaps in her treatment record. *Id.* at 14-21.

Plaintiff argues that the Law Judge erred by failing to find that her headaches were a severe impairment. (Dkt. No. 15, at 19-20.) A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). Here, plaintiff testified that she suffers from daily headaches, describing them as, "terrible, pain that keeps shoot (sic) in my head…[m]y head is throbbing all the time." (R. 32-33.) Plaintiff also referred to her headaches as "severe migraines." (R. 171, 180.) Treatment records from the Free Medical Clinic of Martinsville and Henry County also reveal several complaints of headaches in 2005, 2009, and 2010. (R. 388, 394, 397-400, 419, 420-422.) The Law Judge acknowledged plaintiff's complaints in his review of the medical record, but he did not discuss her headaches at step 2, much less find them to be a severe impairment. (R. 12-14, 15-18.) However, plaintiff has never been diagnosed with any headache impairment, including migraines, and neither her treating physician nor the consultative examiner ("CE") refers to them. (R. 320-324, 368-379.) Moreover, plaintiff was not prescribed any medication for headaches, though she took Aleve, ibuprofen, and possibly other medications for general pain relief. (R. 351, 378, 385, 388.) In the end, it appears to the undersigned that plaintiff's treatment providers and the CE considered her headaches as a symptom of other impairments, including diabetes and hypertension which the Law Judge found

4

to be severe, rather than as an independent condition. (R. 388, 394.) Moreover, there is no medical evidence indicating that plaintiff's headaches cause her significant limitations beyond those considered by the Law Judge. Accordingly, the Law Judge did not err by failing to find plaintiff's headaches to be a severe impairment.

Plaintiff also contends that the Law Judge erred by failing to evaluate and consider the functional effects of her obesity on her RFC. (Dkt. No. 15, at 22-23.) Although obesity is no longer a listed impairment, it is still considered a "medically determinable impairment," the effects of which must be considered when evaluating disability, including the severity of an individual's impairments. *See* SSR 02–1p, 2002 WL 628049, at *1, 3 (2002). SSR 02–1p specifically ensures that obesity is considered not only under the listings, but also in assessing a claim during other steps in the sequential evaluation process, including when assessing a claimant's residual RFC. *Id.* Obesity, when considered in combination with other impairments, may or may not increase the severity or functional limitations of those other impairments. *Id.* at 5-6. Failure to account for the functional effects of obesity throughout the sequential evaluation may rise to the level of reversible error. *See Richards v. Astrue*, No. 6:11CV00017, 2012 WL 5465499, at *8 (W.D. Va. July 5, 2012).

Plaintiff offers that the Law Judge failed to consider how her obesity exacerbates her lumbar spine pain and sleep apnea and causes additional movement and postural limitations that require her to rest during the day due to pain and fatigue. (Dkt. No. 15, at 25-26.) However, after a careful review of the record, it is clear that the Law Judge adequately considered plaintiff's obesity when making his RFC determination. Earlier in the sequential evaluation, he found that plaintiff's obesity was a severe impairment. (R. 12.) He also specifically considered whether it exacerbated any of her other impairments to the point that they met or equaled the

requirements of a listed impairment, particularly regarding her respiratory and musculoskeletal systems, citing SSR 02-1p. (R. 14-15.) The Law Judge carefully considered each treatment note in reaching his decision on plaintiff's RFC, discussing plaintiff's weight and diagnoses of obesity. (R. 15-20.) He also relied heavily on the consultative examination and opinion of William Humphries, M.D., who specifically acknowledged and diagnosed plaintiff's obesity, taking it into account in his functional assessment.[4] (R. 19, 320-324.) Furthermore, here, unlike in *Bradberry v. Astrue*, No. 7:11CV00235, 2011 WL 6296728, at *4 (W.D. Va. Dec. 15, 2011), the Law Judge took into account the limitations resulting from her obesity as well as other limitations produced by her severe impairments when he restricted plaintiff to a limited range of sedentary work. (R. 15.); *See Freeman v. Colvin*, No. 7:12CV00050, 2013 WL 3967487, at *7-8 (W.D. Va. July 31, 2013). Accordingly, the Law Judge did not err in his analysis of the effects of plaintiff's obesity on her functional abilities.

Plaintiff also argues that the Law Judge erred in failing to assign more weight to the opinion of her treating physician Charles Marshall, M.D. (Dkt. No. 15, at 11-17.) The opinions of treating physicians that are consistent with the other substantial evidence of record and are well supported by medical acceptable clinical and diagnostic techniques are entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Otherwise, they are entitled to significantly less weight. *See Craig. v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Several other factors also play a role in determining the weight to assign medical opinions of record, including the length, nature, extent, and frequency, etc. of the treatment relationship. *See* 20 C.F.R. § 404.1527(c).

---

[4] See *Davis v. Astrue*, No. 7:09CV00200, 2010 WL 424144, at *4 (W.D. Va. Feb. 3, 2010) (finding substantial evidence supported a Law Judge's decision when he failed to address the claimant's obesity but did rely on a medical opinion which took it into account); *Fisher v. Astrue*, No. 6:11CV00026, 2013 WL 1192486, at *5 (W.D. Va. Jan. 29, 2013) (adopted in *Fisher v. Commissioner of Social Sec.*, No. 6:11CV00026, 2013 WL 1192576 (W.D. Va. Mar 22, 2013) (noting the Law Judge's reliance on medical opinions that considered plaintiff's obesity satisfies the requirements of SSR 02-1p).

Dr. Marshall opined that plaintiff was morbidly obese and suffered arthritis, depression, diabetic neuropathy, and diabetic retinopathy. (R. 370.) He also opined that plaintiff could not walk or stand for any duration of an eight-hour workday, could not sit for six hours of a workday, could occasionally lift or carry less than ten pounds, was limited in manipulative, pushing, and pulling functions; could never perform a variety of postural activities, suffered 9 out of 10 pain, and would be permanently disabled from work. (R. 368-379.)

The Law Judge gave Dr. Marshall's opinion little weight because he found it inconsistent with the physical examinations of record and that the opinion was based primarily on plaintiff's subjective complaints, which the Law Judge found were not entirely credible. (R. 18-19.) These findings are supported by substantial evidence. While it is clear that plaintiff's hypertension and diabetes are poorly controlled, and she is morbidly obese, the physical examinations and other objective evidence of record reveal that plaintiff was not as severely limited by her impairments as Dr. Marshall opined. In a May 2006 treatment report from Memorial Hospital of Martinsville, plaintiff complained of anxiousness and moderate pain, numbness, and tingling in her back and extremities. (R. 308.) However, plaintiff's physical examination was normal, with normal range of motion and neurological findings. (R. 309.) A chest X-Ray and CT were also relatively normal, though an EKG did reveal some abnormal findings. (R. 310-317.) A sleep study performed in April 2009 revealed plaintiff suffered mild obstructive sleep apnea and had a partial good response to CPAP therapy. (R. 344, 349.) The same month, a physical examination from the emergency room of Memorial Hospital noted some wheezing and diminished breathing sounds, along with slightly worse EKG demonstrating mild heart problems, but it was otherwise normal, with normal extremities, strength, and nerve function. (R. 350-361.)

The Law Judge relied heavily on the report of Dr. Humphries' consultative examination. (R. 19, 320-324.) It revealed that plaintiff had slightly reduced range of motion and tenderness in her neck and back, along with a mild buffalo hump; a negative straight leg raise test at 90 degrees, though noting some knee, popliteal and calf discomfort at 80 degrees; slightly reduced range of motion in her shoulders and elbows and diffuse tenderness throughout her upper extremities; reduced range of motion in her hips and knees with tenderness in her knees and feet; limitations in coordination, including reduced grip strength, slow paced and slightly wide-based gait; and some mild to moderate neurological deficits in her upper and lower extremities. (R. 321-322.) However, he found that plaintiff was otherwise normal, including able to ambulate without need of an assistive device. (R. 322.) He diagnosed plaintiff with hypertension, obesity, diabetes with peripheral neuropathy causing mild balance problems, polyarthraglias in her hands, knees, and hips, with the inability to rule out mild degenerative joint disease; atypical chest pain; and probable sleep apnea with CPAP utilization. (R. 323.) Despite these deficits and impairments, he opined that she could perform a range of sedentary work. (R. 323.)

Imaging and other diagnostic evidence from June 2009 revealed that plaintiff suffered minimal anterolisthesis that was degenerative in nature with posterior facet arthropathy, a mild degree of cardiomegaly, and a moderate decrease in diffusing capacity. (R. 326-333.) However, findings were otherwise normal. *Id.* In May 2010, plaintiff reported back to Memorial Hospital and complained of congestion. (R. 423.) Other than problems concerning congestion and anxiousness, plaintiff's physical examination was normal, with full range of motion in her back and extremities and intact neurological findings. (R. 423-424.) A chest x-ray was normal (R. 425), and though plaintiff's heart size was borderline, her condition was found to be stable with

no definite acute disease (R. 438).[5] While this objective evidence indicates that plaintiff has significant limitations, it certainly does not compel a finding that she was as limited as Dr. Marshall opined.

The record also contained more than a dozen treatment notes from the Free Medical Clinic of Martinsville and Henry County during the relevant period, with Dr. Marshall serving as one of her primary physicians at the clinic. (R. 386-389, 394-401, 419-422.) While these reports note plaintiff's complaints and history, they include little in the way of physical findings. Most often, they simply record her weight, temperature, pulse, blood pressure, and blood sugar, without providing any details relating to her functional limitations. These reports indicate that plaintiff's diabetes, hypertension and weight were generally in poor control, and treatment notes in June 2008 and February 2009 do note signs of edema and pain, though the former indicates that plaintiff was otherwise normal in function, including normal gait. (R. 388-389.)

Having examined the record thoroughly, the undersigned cannot discern the precise objective findings Dr. Marshall relied upon to form his opinion. Accordingly, the undersigned agrees with the Law Judge's finding that Dr. Marshall relied upon plaintiff's subjective complaints as forming the basis of his opinion. On this point, and though it is a close question, the undersigned finds that the Law Judge's credibility determination is also supported by substantial evidence. There are significant differences between plaintiff's allegations and the objective medical evidence. While plaintiff's testimony would suggest substantial limitations in her daily activities (R. 29-41, 190-198, 231-240), her medical records fall short of confirming

---

[5] Plaintiff filed additional evidence with the Appeals Council. (R. 445-475.) This evidence concerns the period following the Law Judge's decision, from December 2011 through May 2012. *Id.* While it does indicate that plaintiff's financial difficulties in gaining access to treatment increased, to the point that she could not afford medication and was denied access to the Free Clinic, it does not relate or refer back to the relevant period of this case. Accordingly, it has no bearing on whether the final decision of the Commissioner is supported by substantial evidence. *See* 20 C.F.R. § 404.970(b).

those limitations and are frequently inconsistent with them. Furthermore, there were significant gaps in plaintiff's treatment record, upon which the Law Judge found that her allegations concerning the intensity, persistence, and limiting effects of her impairments were not entirely credible. (R. 18-19.) The Commissioner may rely on a claimant's frequency of treatment and compliance with their treatment plan in determining their credibility. *See* SSR 96–7P, 1996 WL 374186, at *7-8 (1996). However, a claimant's inability to afford treatment cannot be held against them, and the Commissioner should consider whether the claimant had good cause for not seeking out or complying with treatment, including financial difficulties. *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir. 1986); SSR 96–7P, 1996 WL 374186, at *7-8 (1996).

Here, there are only three treatment notes from January 2005, her onset date, through the end of 2008. (R. 308-317, 394, 395.) There is also only a single treatment note, relating to congestion, between January and August 2010, and the physical examination findings therein essentially were normal. (R. 397, 422, 423-424.) Moreover, there is evidence that plaintiff did not always comply with instructions about taking her prescribed medications. (R. 388, 389.) The Law Judge certainly did not address plaintiff's ability to afford treatment or other reasons for these gaps in the record. While there is evidence that plaintiff may have had difficulties at times in affording her medications, there is no indication that she was denied medication or turned away from treatment during the relevant period. *See Gordon v. Schweiker,* 725 F.2d 231, 237 (4th Cir. 1984); SSR 82-59, 1982 WL 31384, at *4 (1982). Accordingly, the Law Judge failure to have considered plaintiff's ability to afford treatment is harmless, and good cause does not exist to remand the case for further proceedings on this account.

For all these reasons, it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

8-12-2013
Date