IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CAROLYN R. EGGLESTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:12-cv-00043 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner of Social | ) | |
| Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R & R") of Hon. B. Waugh Crigler recommending that I grant Defendant's Motion for Summary Judgment [ECF No. 16], deny Plaintiff's Motion for Summary Judgment [ECF No. 14], and dismiss the case. Plaintiff filed timely Objections to the R & R [*see* ECF No. 19]; Defendant did not respond. Therefore, the Objections are ripe for consideration. *See* Fed. R. Civ. P. 72(b)(2). I have reviewed the motions for summary judgment, Judge Crigler's R & R, Plaintiff's Objections, and the relevant portions of the record. For the reasons stated below, I will **OVERRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment, and **DISMISS** this case from the Court's docket.

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On February 4, 2009, Plaintiff Carolyn R. Eggleston ("Plaintiff") filed an application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401–433; 1381–1383f (2013). (R. 130-40.) In her application, Plaintiff alleged that she was disabled as of January 7, 2005. (*See* R. 130, 134.)    Plaintiff's   claim   was   denied   initially   on   July   13,   2009,   and   again   upon

reconsideration on April 27, 2010. (*See* R. 10, 54-63, 66-71.) On June 25, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 72-73.) On January 20, 2011, an ALJ held an administrative hearing to determine whether Plaintiff was under a disability within the meaning of the Social Security Act. (R. 27-46.) Plaintiff and Dr. Barry Hensley, a vocational expert, appeared and testified. (*See id.*) Plaintiff was represented by counsel at the hearing.

On February 25, 2011, the ALJ submitted his decision including findings of fact and conclusions of law. (R. 10-21.) The ALJ applied the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since January 7, 2005, her alleged disability onset date. (R. 12.) He found that Plaintiff suffered from the following severe impairments: "hypertension; diabetes with peripheral neuropathy; sleep apnea; obesity; minimal L4 anterolisthesis and arthropathy." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ found that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, subpart P, appendix 1. (R. 14.) In making this finding, the ALJ specifically noted that, although "[t]here is no specific medical listing for obesity . . . , the effects of this impairment on other body systems, particularly her respiratory and musculoskeletal systems, have been considered." (*Id.*) Based on the evidence, the ALJ determined that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she should not climb, kneel, or crawl, and she should avoid hazards, heights, and fumes." (R. 15.) The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the . . . residual functional capacity assessment." (R. 18.) He further noted that "[t]he claimant's treatment records do not support her allegations regarding the severity of her limitations." (R. 18.) With regard to Dr. Charles Marshall, one of Plaintiff's treating physicians, the ALJ afforded "little weight" to his opinion because the ALJ found that there was "minimal physical examination performed during treatment visits," and because Dr. Marshall "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (R. 19.)

Plaintiff subsequently appealed the ALJ's decision to the Appeals Council. (*See* R. 127.) The Appeals Council found no basis in the Record, or in the reasons advanced on appeal, to review the decision. It denied review and, on August 21, 2012, adopted the ALJ's decision as the final decision of the Commissioner. (R. 1–5).

Plaintiff initiated the present civil action in this Court on October 3, 2012. (Comp. [ECF No. 3].) Thereafter, I referred this matter to Magistrate Judge Crigler for consideration of Plaintiff's and Defendant's dispositive motions. (Order, Apr. 8, 2013 [ECF No. 11].) On August 12, 2013, Judge Crigler issued his R & R in which he concluded that I should grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss the case. (R & R [ECF No. 18].)

On August 26, 2013, Plaintiff filed timely Objections to the R & R. (Pl.'s Obj. [ECF No. 19].) Plaintiff questions five of Judge Crigler's conclusions in the R & R: (1) whether there is substantial evidence to support the ALJ's determinations regarding conflicts in the evidence and Plaintiff's credibility (*see id.* ¶ 1); (2) whether there is substantial evidence to support the ALJ's

conclusion to afford Dr. Marshall's opinion "little weight" (*see id.* ¶ 2); (3) whether the ALJ erred in finding Plaintiff less than credible (*see id.* ¶ 3); (4) whether substantial evidence supports the ALJ's determination that Plaintiff's headaches were not severe impairments (*see id.* ¶ 4); and (5) whether the ALJ properly considered the effects of Plaintiff's obesity (*see id.* ¶ 5). The Commissioner did not file a response to Plaintiff's Objections.

## II. STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2012); *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the Vocational Examiner, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v.*

*Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *See Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the [ALJ]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

### III. DISCUSSION

In his Objections to the R & R, Plaintiff reiterates some of the same arguments she made in support of her Motion for Summary Judgment. (*Compare* Pl.'s Br. in Supp. of Mot. for Summ. J. pg. 17 [ECF No. 15] (arguing that the ALJ erred in not affording Dr. Marshall's opinion greater weight), *with* Pl. Obj. ¶ 2 (same).) Although I consider such recycled arguments to be improper,[1] I will address each of Plaintiff's arguments in turn.

A. Plaintiff's general Objection to the Report and Recommendation is improper

Plaintiff's first Objection—"[t]he Report and Recommendation erroneously concludes that substantial evidence supports the ALJ's resolution of the conflicts in the evidence and credibility determinations"—falls woefully short of the specificity required of objections to a Report of the Magistrate Judge. See Fed. R. Civ. P. 72(b); *Howard v. Sec'y of Health & Human*

---

[1] Mere repetition of those arguments rejected by Magistrate Judge Crigler is generally not sufficient to state an objection under Federal Rule of Civil Procedure 72. As has been previously stated:

> The issues that Plaintiff raises in her general objection have already been addressed by Magistrate Judge Crigler when they were before him in Plaintiff's summary judgment brief. Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection "make[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

*Veney v. Astrue*, 539 F. Supp. 2d 841, 845–46 (W.D. Va. 2008) (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

*Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *Suttles v. Chater*, Case No. 96-2138, 1997 WL 76900, at *1 (4th Cir. Feb. 25, 1997) (unpublished) ("Such general, non-specific objections are not sufficient."). Plaintiff does not allege which determinations were in error, whose credibility was improperly determined, or the reasons why the ALJ was wrong. "General objections to a magistrate judge's report and recommendation . . . lack the specificity required by Rule 72 and have the same effect as a failure to object." *Phillips v. Astrue*, Case No. 6:10-cv-53, 2011 WL 5086851, at *2 (W.D. Va. Oct. 25, 2011) (unpublished) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)). Insofar as any specifics are raised which would support Plaintiff's broad and general Objection, they are addressed in the rulings on her other Objections.

### B. The ALJ properly afforded Dr. Marshall's opinion "little weight"

Plaintiff next asserts that Judge Crigler "erroneously conclude[d] that substantial evidence exists to support the ALJ's decision to not give greater weight to the opinions of Plaintiff's treating physician, Dr. Charles Marshall." (Pl. Obj. ¶ 2.) When evaluating medical opinions, the ALJ should consider the following non-exclusive factors: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)). Courts "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (internal quotations omitted). Nevertheless, the treating physician's opinion is not entitled to this deference if it proves inconsistent with the objective evidence or other substantial evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)

(citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 404.1527(d)(2)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996)). Accordingly, "[t]he ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Id.* (citing *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)).

In this case, there is substantial evidence to support the ALJ's decision to defer to the objective medical evidence instead of the treating physician's subjective opinions regarding Plaintiff's ailments. Plaintiff's main concern with the ALJ's conclusion is that he based it on his determination of Plaintiff's credibility. The ALJ concluded that Plaintiff was not entirely credible, and because Dr. Marshall based his opinions primarily on Plaintiff's "subjective report of symptoms and limitations . . . and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported," he accordingly afforded "little weight" to opinions based almost exclusively on Plaintiff's subjective reporting. (*See* R. 16-17.) The ALJ found that Plaintiff's failure to seek treatment for her alleged ailments over extended periods of time, as well as her failure to raise several of her complaints with her physicians, undercuts her claims regarding the severity of those ailments. (*See* R. 18-19.) Plaintiff maintains this is in error because the ALJ failed to consider the relevant factors in determining if Plaintiff's failure to seek treatment diminishes her credibility.

Plaintiff advocates for a standard that is stricter than is actually required. According to Social Security Ruling 96-7p, the ruling on which Plaintiff relies:

> When evaluating the credibility of an individual's statements, the
> adjudicator must consider the entire case record and give specific

> reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). A review of the ALJ's decision reveals that he adequately reviewed the evidence of record and gave adequate reasons to support his conclusions that Plaintiff is less than credible and that Plaintiff's credibility negatively affected Dr. Marshall's opinion. For example, the ALJ noted that Plaintiff did not seek treatment with her physicians for extended periods of time, and that she raised numerous complaints in her applications that she never raised with her physicians. (*See* R. 18-19.) Though I agree with the Magistrate Judge that this is a "close question," there is substantial evidence to support the ALJ's conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)) ("In reviewing for substantial evidence, [the Court] does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].").

> C. <u>The ALJ conclusion that Plaintiff was less than credible is supported by substantial evidence</u>

As a corollary to her second Objection, Plaintiff asserts that the ALJ erroneously

concluded that she was not credible. Insofar as that argument is addressed *supra*, I adopt that analysis here.

Plaintiff also contends that the ALJ erred by not considering that Plaintiff could not afford treatment; she contends that her inability to pay for treatment—not the fact that she is exaggerating her symptoms—is the reason she failed to seek treatment. Unfortunately, the Record does not support this conclusion. Plaintiff says that "at times she was unable to afford the cost of her medications." (Pl.'s Obj. pg. 3.) She supports this with a citation to a single page of a Record that reaches almost 500 pages. Moreover, that cited page *does not* say that she could not afford her medicines; the only notation addressing Plaintiff's medications was that she "has not been on HTN/DM [hypertension/diabetes mellitus] meds.," and "Lisinopril makes her sick." (R. 388.) The records do not say that she was not on medication because she could not afford them. In fact, on June 24, 2008, Plaintiff told her doctor that she "wants to go back on meds," and that she had not had "BP or DM [blood pressure or diabetes] meds [for] 2 years," not that she was unable to afford them. (R. 389.) Additionally, Plaintiff claims she "was unable to pay to be seen" on May 30, 2012. (See Pl.'s Obj. pg. 3.) In fact, she was only unable to pay for her scheduled urine culture; she apparently was seen by a physician, and her Metformin prescription was refilled. (*See* R. 461-62.)[2] Her argument that she was unable to pay for her treatment or medications is not supported by the Record,[3] and the ALJ did not err in not addressing an argument that was not raised and is not supported by evidence.

Because there is substantial evidence to support the ALJ's decision, and because

---

[2] Although Plaintiff states that her May 30, 2012, records are found on page 449, they are located on pages 461-62.

[3] Likewise, Plaintiff's claim that she lost her insurance when she lost her job is not reflected by the records she cites. (*See* R. 391.) While I have no doubt that Plaintiff's financial troubles made securing adequate health care quite difficult, the Record before me simply does not establish the effect or extent of that difficulty on her medical treatment.

Plaintiff's position is not supported by the Record, the Objection is overruled.

### D. The ALJ did not err when he concluded that Plaintiff's persistent headaches were not severe impairments

Plaintiff's fourth Objection is that the ALJ erroneously found that her headaches were not severe impairments. A severe impairment is any "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2012). At her hearing before the ALJ, Plaintiff testified that she suffered from headaches "about daily," and that the associated pain was "terrible, pain that keeps shoot in [sic] my head. My head is throbbing all the time." (R. 32.) Likewise, she complained of headaches at the Martinsville Free Clinic in 2005, 2009, and 2010. (R. 388, 394, 397-400, 419-22.) Although the ALJ recognized the existence of Plaintiff's headaches, he did not find them to be severe impairments. (*See* R. 15-18.) In fact, her physicians never diagnosed her headaches as migraines, and never ascribed any diagnosis at all to her symptoms. Even more compelling, her treating physicians did not refer to her headaches at all in diagnoses and treatment plans, and no one prescribed her any medication for headaches. (*See, e.g.*, R. 316 [noting a negative scan "for acute intracranial process"]; 350-54; 383-85.) Therefore, I conclude that there is substantial evidence to support the ALJ's conclusion that Plaintiff's headaches are not a severe impairment.

### E. The ALJ properly considered Plaintiff's obesity

Plaintiff's final argument is that, although the ALJ considered her obesity as a factor, he did not consider Plaintiff's evidence that her obesity "causes additional limitations not accounted for by the ALJ in his RFC [residual functional capacity] determination." Here, it is true that the ALJ found that Plaintiff's obesity is a severe limitation. (*See* R. 12-13.) What is also true is that the ALJ gave adequate consideration to all of Plaintiff's symptoms, as well as the effect her obesity has on them. (*See* R. 14.) The ALJ's thorough review of Plaintiff's actual symptoms

and medical records necessarily includes the effect her obesity has on those symptoms. Moreover, there are no records which suggest that Plaintiff's obesity "was disabling or had functional consequences requiring the ALJ to engage in a more detailed evaluation of her obesity." *Phelps v. Astrue*, Case No.7:09-cv-210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). In the absence of such evidence, I cannot say that the ALJ's conclusion is not supported by substantial evidence, and the Objection will be overruled.

### IV.     CONCLUSION

The ALJ's decision is supported by substantial evidence and the Record is otherwise free from clear error. Therefore, I will **OVERRRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **DISMISS** this case from the Court's docket.

The clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 23rd day of September, 2013.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE